Good morning. I'm used to people saying good morning back, so good morning. Thank you. We have two cases on the call today, and for the lawyers for both sides, we have guests. They're from Beijing. They are judges, prosecutors, professors. And I would like everyone to speak up as loudly as I'm speaking now when you're in front of the podium, and also to speak slowly so that they can be able to understand what you are saying. Please do that for us. I said this to the audience, but I'm going to say it again. The people who are on this side are the appellants. They're the people who are bringing the case before the court. They are the people who want to change something about the decision. The people on this side are the appellees. They are the people who won at the trial level, and they want us to uphold the decision of the trial judge. For the lawyers, when you are in front of the podium, please speak up loud and clearly. And you can both step forward and just identify yourselves for the record first. Hi, my name is Assistant Appellate Defender Robert Melching for Derek Neal. Good morning. My name is Assistant State's Attorney Yvette Loison for the people. Thank you. Excuse me, could you spell your last name? Mr. Robert Melching. Yes, Melching, M-E-L-C-H. You mean L-C? Yep, H-I-N-G. Thank you. No problem, thanks. Alright, and the clerk can call the first case. Case number 11-0409, People v. Derek Neal. Good morning, Your Honors. Good morning. And may it please the Court, I'm Assistant Appellate Defender Robert Melching on behalf of Derek Neal. May I reserve a few minutes for rebuttal? You absolutely can, and I'm going to, it's a big room. I want you to fill it with your voice. Alright, I can do that. I'm not yelling at you, Your Honors. Your Honors, Mr. Neal's petition contains a substantial showing that his trial counsel failed to corroborate his testimony in self-defense theory with witness testimony that members of the oncoming mob that he fired upon were carrying guns and that they fired those guns upon him. Let me ask you a question. Sure. At trial, the defendant admitted that he was the aggressor, that he shot first. Are you telling us now that he did not shoot first? Your Honor, even if he did shoot first, which is what he testified to, that could still support second-degree murder conviction. So counsel was still ineffective for failing to put forth testimony, even if the order of shots were different. Alright, well, you have witnesses you claim that are going to say that they also shot. Isn't that correct? I have witnesses who would claim that there were others shooting. There were others who were shooting? Correct. Then how come all the bullets came from the same gun? Well, an interesting part about this case is that Officer Ferguson discovered certain shell cases in a certain area. He did not search the area. He did not testify that he searched the area. He did not testify that somebody else searched the area. He merely said that he found shell cases in this area. And as your Honors know, also, revolvers do not necessarily leave behind shell cases. Okay. The evidence at trial showed that Mr. Neal was a... But was there any testimony that someone had a revolver? No, Your Honor. But there was also not testimony regarding the characteristics of the other weapons or affidavits or the police GPRs. The evidence at trial showed that Mr. Neal was invited to a barbecue by Nakia, who then got in an argument with a girl named Annette, and that left the barbecue and she came back with 30 to 50 teenagers and young adults. It was largely uncontested at trial. You understand we've read the record and we know what the facts are. So Mr. Neal testified, and if he had brought this witness, if he had effectively brought Ms. Davis, Ms. Davis could have offered exactly the testimony that he needed. Somebody who could have shown, as he had testified, that there were other weapons present. She would have testified that people in the mob had sticks, poles, and a box cutter, and that a man known as Maine, so she identified one person and two other people, fired their guns at Neal, and he only then fired in self-defense. But doesn't that contradict his testimony? How does it help his testimony when he says that there's a mob coming in, so basically he fired, before they got him, at them to someone coming in and saying, no, three other people fired at him first, and he only fired in self-defense. It says one of those people is really lying. How does that help the defendant? I don't think we should judge the credibility of a witness based purely on the order of shots fired when there's 50 people approaching somebody. It's a chaotic environment. Perceptions, different ideas, and also, more importantly, counsel also was pursuing second degree murder. Regardless of the order of shots, whether or not he shot first, that was still supportive, and self-defense is an affirmative defense. I understand that. I just do not see how, his self-defense was that there's 30 to 50 people coming, and so he shot at them. He knows if he shot first, and to put someone else on, who's going to say that, no, three other people shot at him first, and then he shot back, just seems, I mean, if I were the lawyer trying the case, I wouldn't put that. person on to say my client's actually lying. That's the hump that I'm trying to get over. So how does it become ineffective assistance of counsel if the new testimony would be deleterious to your client? Well, I suppose my basic argument, Your Honors, would be that it wasn't deleterious. Yeah, that's why I'm asking how is it not completely contradictory testimony to what the defendant says, not deleterious. So I would argue that Mr. Neal testified that he fired first. April testified that other people fired first. April wasn't involved. April was involved in a melee, in the middle of this. I think it's possible that April's testimony and Mr. Neal's testimony were different, but they still supported second degree murder. How about April's bias here? April is a potential relation of Mr. Neal through extension, but nonetheless, you must put forth evidence. There was no evidence at this trial of other guns. I mean, that's simply ridiculous that you wouldn't put forth evidence to support your client's account that other people had guns and that he fired in self-defense. Yeah, I hear what you're saying, but I'm trying to put myself in the position of the defense lawyer. I have a client who is the person who is supposedly in the position of the defense lawyer. Having all these people come at him, I can't imagine my client not knowing if he fired first or three other people fired at him. Maybe he could not hear the first shot because he's so scared, but three people fired at him before he fires? It just seems like I'd be an idiot of a defense lawyer to put someone on to say exactly the opposite of what my client said. Well, simply because the testimony is different doesn't mean that it's possible that Mr. Neal himself was the one who had the correct account, but even if Ms. Davis was incorrect about the order of shots, that would still support second degree. It's not necessarily his credibility that's being attacked. Yes, but you see, the jury in this case heard all that evidence, didn't they? They heard his own testimony himself only. They did not hear any gun testimony. They heard his testimony only that he fired. Well, as far as second degree murder goes, they heard him say that there was a shootout after he shot first. And that he's the only person who testified to that. Well, I understand that. He also had a duty to corroborate that with other testimony about a shootout. But he wouldn't have corroborated it by saying that there was shots before he fired. Because the defendant says the shots were fired after he fired. So it would, again, contradict the defendant's testimony. I believe it outweighs, Your Honor, I believe it outweighs the idea of testimony about a shootout outweighs the inconsistencies about the order. Absent this testimony, there is no testimony about a shootout. Which is striking in a case where the theory is that I fired in self-defense because there were other guns present. To do that would be a disservice to your client. And the State capitalized on this failure, Your Honors. The State argued during closing that Mr. Levine-Levotte understand that there were no other guns present. He tried to bring up the testimony of Jimmy and Shalanda that there had been other guns present. And, of course, he wasn't able to do that because it had only been brought in for impeachment. Absent the corroborative testimony, the jury agreed and found Mr. Neal guilty of first degree murder. You can't make credibility determinations on paper. We all know that as a court. I think some of these different issues would be very well received at an evidentiary hearing. We could resolve the order. We could resolve possible genesis of these misorders. I believe that that is our best solution in these cases. I would take this to a third stage evidentiary hearing. We could call counsel. We could ask counsel about these things. We could call separate witnesses. And any inconsistencies would be resolved in that manner.  We have an affidavit from April. I know. I'm talking about Shalanda and I forgot the other person's name. Jimmy, Your Honor. Jimmy Wong. We could go to a third stage hearing on the basis of April's testimony, of April's affidavit. I apologize. And that does not preclude consideration of the other two witnesses. Counsel could amend the petition with affidavits from these people. And, of course, we could try to call them in an evidentiary hearing. Mr. Neal is primarily arguing a third stage on the basis of Ms. Davis' affidavit. However, we do have documents. PCHA only requires affidavits or documents. And we do have official documents from the police department saying that these two people would have testified, or not that they would have testified, but that they believe that there were other guns present on the scene. Well, do you think that that's appropriate to refer to a police report without giving affidavits when the Act calls for affidavits? Well, this is one of the inherent problems with the PCHA for an imprisoned petitioner. It's very difficult for that person to obtain affidavits, you know, from police reports and such. So he put forth the police reports. If we go to an evidentiary hearing, we can call these people, we can ask these questions. But for now... Well, when it goes to stage two, then, of course, the lawyer has the opportunity to get the affidavits. Sure. But at this point, there's verifiable facts, and that's sufficient to go to a third stage. These are things that we could go to a third stage, we could try to verify. Well, can you show me a case that allows you to go to a third stage when you don't present affidavits? I do not have a case in front of me about that, but I'm... Well, maybe that's because there is no such case. The PCHA also lists documents, and under the legislative language, you should be allowed to proceed with sufficiently verifiable documents. Well, that's why we have affidavits that verifies. Any other document could be delusionary. Yes, Your Honor. And I would argue that Ms. Davis's affidavit should take this case to the third stage evidentiary hearing. Okay. All right, counsel, go on. Okay. You have a minute or so. Okay. Your Honor, Mr. Neal's petition contains a substantial showing that counsel was ineffective where he failed to call self-defense witnesses in a case where that was the deciding issue between a conviction of first-degree murder and either an acquittal or a second-degree murder conviction. If April, Jimmy, and Sharonda are called in an evidentiary hearing and testify as to the firearm testimony that the jury was denied to resolve counsel's ineffectiveness, it will demonstrate that Mr. Neal's verdict is not worthy of confidence and that he should be granted a new trial. This Court should reverse the circuit court order dismissing Mr. Neal's petition and remand this cause for just such a hearing. Thank you, counsel. Good morning, Your Honors. May it please the Court. Your Honors, it's the defense's position that defense counsel did a disservice to his client by failing to call April Davis. And that not calling evidence tending to show that there were other guns in the area at the time of this murder is ridiculous. The people's position is just the opposite. If this Court provides the relief that the defense is requesting in this case, then we're essentially saying that trial counsel is ineffective for presenting a defense that literally came from the horse's mouth. April Davis' affidavit contradicts the testimony that was offered by the defendant at trial. Trial counsel should not be found to be ineffective and defendants should not get a third-stage hearing or finding that there was a substantial showing of ineffective assistance when the defense presented in this case was the defense that the defendant himself set forward. We all know what the standard is at the second stage of post-conviction review. Courts must determine without any fact-finding or credibility determination whether the well-pleaded allegations... Isn't the fact that there were other shooters about and not just the defendant that these witnesses would have testified to, isn't that of greater moment than the order of the shooting? I mean, you were talking, we're here talking about mob action, things happening in a rapid fashion, you know, almost 50 people swirling around. Of course there's going to be some confusion going on. So isn't what's significant here the fact that it was not just the defendant shooting, but the defendant is saying that there were other, or has witnesses to say, that he was not alone, that he was reacting in self-defense, in fact? Your Honor, I respectfully disagree with that proposition because the defendant testifies that he was in the crowd, that there were people with sticks and poles and box cutters, that he saw someone lift his shirt and he saw a weapon. The defendant specifically says that he fired four shots before any gun was drawn. He then indicates that he fired at least ten more shots once that gun was drawn. And then he says that there was, he was running away and there was shooting involved. April Davis completely contradicts that. April Davis' affidavit explicitly states that the defendant never shot anyone until three men started shooting at him. That's a complete contradiction. No, how is that a contradiction? The defendant didn't say that he shot anybody. He said that there were four shots and then ten shots. So how is that a contradiction to April's testimony? Because the defendant specifically says that nobody drew a weapon on him before he started shooting. He testified at trial that he began shooting once a person in the crowd lifted his shirt and there was a gun in his waistband. He specifically testified that no one drew on him before he started shooting. April Davis, in turn, says in her affidavit that three men were shooting at defendant before he ever drew his gun and started shooting. That's a clear contradiction, Your Honor. Also, there's other things in her affidavit that are contradictory. For example, at trial, the defendant testifies that April Davis came to the scene where the shooting takes place. He says that the woman who was standing next to him was Nakia. Nakia is the girl who's initially involved in the altercation with Annette that starts this whole ball rolling. April testifies, I'm sorry, not testifies, April puts in her affidavit that she was standing right next to the defendant at the time that the shooting took place. But although the defendant mentions April in his trial testimony, he never interrupted her. He never indicates that she was anywhere near him at the time that the shooting occurred. He says that Nakia was the person standing right next to him and that he was afraid for Nakia. So that's another contradiction in the affidavit. But he didn't say that April was not standing there. No, Your Honor, he did not. So he may not have even noticed her in the hubbub that was going on. While I think that that's feasible, it's interesting to me that in April's affidavit, she specifically says that she was standing right next to the defendant. Right next is a quote from her affidavit. And, Your Honor, at the second stage of post-conviction review, it's not inappropriate for this court to consider trial strategy. The standard says that this court can't make credibility determinations on review, but you can consider trial strategy. So let's look at April Davis and what her testimony would have shown. In her affidavit, she says that she's defendant's brother's fiance. She says that she's defendant's sister. At the time that this was all taking place, she was living with the defendant's sister. That was the person who she was living with on a daily basis. Clearly, April is entrenched in the defendant's family. Trial counsel was presented with a witness who, based on her affidavit, was going to provide testimony that didn't comport with the testimony that the defendant himself intended to testify to at trial. And she was also a witness that the jury could have very likely found incredible in light of her connections to the defendant and his family. All of that testimony presumably would have come out at trial. This court is not required to ignore considerations of trial strategy at the second stage of post-conviction review. In fact, the Illinois Court of Appeals in 2012 specifically noted and takes a first stage case and they said that at the second stage of post-conviction review, considerations of trial strategy are appropriate. We're not asking this court to consider whether or not April's testimony would have been credible to a jury, but trial counsel at the second stage is entitled to a presumption of confidence and considerations of whether the trial strategy was reasonable. And it's the people's position that in this case, most certainly, trial counsel had good reason not to call April Davis as a witness. Also, at the second stage of post-conviction review, this court needs to look at whether or not the information contained in the affidavit is positively rebutted by the record. And the people would submit, as Justice Gordon pointed out, that if there was the shootout in the crowd, there's 16 shell casings recovered. The defendant testifies at trial specifically that he was shooting a 9 millimeter handgun. He accounts for 14 shots at a minimum. He says he shot four times before anybody drew on him and then he shot at least 10 more times. The physical evidence at trial demonstrates that there were 16 shell casings recovered at the scene. They were all fired from the same handgun. That negates the defendant's position and most certainly April's position that there were three different shooters. Also, your honor... Your counsel, what about your opposing counsel's argument that revolvers don't leave shell casings? I'm going to steal right from you and say that there's no testimony anywhere in the record that demonstrates that a revolver was present. Thank you. Also, I'd like to point out, there's another piece of evidence that came in at trial that this Court should be cognizant of. And that is that there was a patrol officer on the scene at the time that the shooting took place. I want to say his name is Officer Ferguson. I think that's correct. Officer Ferguson provides testimony that he was on routine patrol in LeClaire Courts at the time that the shooting occurred, that he heard the shots. He did get dispatched, he heard the shots, and he was on the scene within 10 to 15 seconds. He testifies that he never saw any sticks, he never saw any bats, he never saw any poles. He saw people running. And he's the person who observes the shell casings. So we're also talking about a police officer who's present on the scene within 10 to 15 seconds. That information rebuffs April's claim and frankly defendant's claim that there was a shootout here. Also, in addition to those factors, it's difficult to believe that if there were sticks and bats and poles and box cutters, nothing was dropped while people were running. There's no evidence of that anywhere here. So in sum, the people's position is that April's affidavit fails on two bases. One, because it contradicts what came out of, again, the horse's mouth at trial. It contradicts what came out of the horse's mouth at trial. And two, because it is rebutted by the record. What about the other witnesses? With respect to Sholanda and Jimmy, again, I'd just like to point out that the information that's attached to the defendant's amended post-conviction petition, as Justice Gordon pointed out, is not in the form of any affidavit. It's GPRs that are handwritten, that are police reports, that were presented at trial, aren't in the trial record. They're pulled from the trial file. But Section 122-2 of the Post-Conviction Hearing Act says that a petition must have, quote, attached affidavits, records or other evidence supporting its allegations or state why the same are not attached. Certainly this would be records or other evidence supporting its allegations. Your Honor, it would be the people's position that GPRs have never been found to be sufficient under the Post-Conviction Hearing Act. But assuming, for the sake of argument, that this Court were to find that they were sufficient in this case. Do you have cases that say that they were insufficient? No, Your Honor. Okay. Well, do you know of any case that allowed a police report into evidence? Into evidence at trial? You know, Your Honor, I can't cite a case off the top of my head, but I would venture a guess that it maybe has happened. Certainly for impeachment. Subject to impeachment, yes, Your Honor. But even if we were going to take a look at those criteria for second stage post-conviction review, because first of all, they are rebutted by what's in the record. And what's in the record is the testimony of Detective Murray, who says at trial that his interpretation of what these witnesses were going to say was that there was a male and a female shooting and that the female was actually assisting the defendant. She wasn't in a shootout with defendant, she was there with defendant shooting with him. They were on the same team. That's the testimony that's in the record at trial. Also, I take this Court back to my previous argument about how it's not inappropriate to consider trial strategy here. Let's take a look again. Who are Shalanda? Who's Jimmy? Shalanda is Anat's sister. Anat is the person who's initially in the argument with Nakia that starts this whole melee in the trial. It's very difficult to believe that Shalanda is going to get on the witness stand and provide any kind of testimony that's beneficial to the defense in this case. The other witness is Jimmy. Jimmy is also related to that side of the team. And Jimmy gets shot during this process. He doesn't get injured. It's a graze wound and he refuses treatment. But Jimmy is one of the people who's getting shot by these people. So the chances of Jimmy providing positive testimony for the defense are also slim. It was reasonable trial strategy for trial counsel to avoid calling these witnesses and instead to try to get in the information that these witnesses provided through cross-examination of the detective who was on the stand in this case. That was a reasonable trial tactic. It's insufficient to proceed to the third stage of post-conviction review based on that. Again, Your Honor, in providing relief in this case makes a statement that trial counsel, that you can make a substantial showing of ineffective assistance of trial counsel when trial counsel actually advances the defense put forth by the defendant himself. That can't possibly be the purpose of post-conviction review. Also, the people would like this court to be mindful that it's appropriate to make those considerations. And if you make those considerations, it's clear that there is not a substantial showing that defendant's constitutional rights to the effective assistance of counsel was violated in this case. Accordingly, the people request that this court affirm the trial court's ruling dismissing defendant's post-conviction petition. There are no other questions. Thank you, Your Honors. Thank you. Counsel, you have a couple of minutes. Not so fast, though, so they can understand what you're saying. You really go fast. Okay. Sorry, Your Honor. First off, so far as considering trial strategy at a second stage, there is no such thing as trial strategy where the counsel fails to even investigate a witness. In April, in her affidavit, which we're taking at TRU, says that counsel never even contacted her. So far as Shalanda and Jimmy, I don't think we can assume that they would be unwillingly to provide favorable testimony. That's an unfair assumption at the first stage. We're supposed to take the well-pled facts as true. What is significant, the state is arguing that we should take the defense from the horse's mouth. Counsel should corroborate what was given from the horse's mouth. Well, the horse's mouth was firearm testimony. And that was not corroborated whatsoever. So I believe the dangerous idea here is that we would not, or that we would condone counsel not providing corroborative testimony to his client. I mean, what is significant is that there were other gunmen. Again, as Justice Hall mentioned, simply because Nakia was next to him does not mean that April was not. Those two are sisters. It's not a strange presumption, or it's not strange that they would be both there. And simply, there's going to be inconsistent testimony, and we don't want that. This is a case where shortly afterwards, there was a bike thrown through a window of a front living room, and a house of one of the witnesses was started on fire. This was truly a chaotic experience. The state won its conviction on inconsistent testimony about the number of shots fired and how the crowd came together. And regardless of whether the order of shooting began to be handled, I think I touched on this, it still supports second-degree murder. For these reasons, this circuit court ordered dismissing Neal's petition and remand this cause for an evidentiary hearing. Thank you, Your Honor. Thank you, counsel. Of course, we will take the case under advisement. Thank you.